## GEORGINA SPILKE *v.* KENNETH C. SPILKE
### (AC 29223)

Bishop, DiPentima and Foti, Js.

Argued May 26—officially released August 25, 2009

*Georgina Spilke*, pro se, the appellant (plaintiff).

*William B. Wynne*, with whom, on the brief, was *Joseph M. Wicklow III*, for the appellee (defendant).

FOTI, J. The plaintiff, Georgina Spilke, appeals from the judgment of the trial court denying her motion for contempt and to open and to vacate the judgment dissolving her marriage to the defendant, Kenneth C. Spilke. In her postjudgment motion, the plaintiff alleged that the defendant fraudulently misrepresented certain information on the financial affidavits that he submitted prior to and at the time of the dissolution. On appeal, she claims that the court abused its discretion in denying her motion because she presented evidence of fraud sufficient to open the judgment. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the plaintiff's claim. On July 30, 2003, the parties' marriage was dissolved after an uncontested hearing before the court, *Gruendel, J.* At that time, a separation agreement entered into by the parties was incorporated into the judgment of dissolution. Under that agreement's terms, the parties waived alimony, and the defendant agreed to pay the plaintiff a lump sum settlement of $185,000 by August 13, 2003. Prior to the dissolution of the parties' marriage, and as part of the settlement negotiations, the defendant provided the plaintiff with a sworn financial affidavit dated June 5, 2003. That original financial affidavit (original affidavit), although bearing the same date, differed from the second financial affidavit (second affidavit) submitted to the court by the defendant on July 30, 2003. The differences between the two documents were found in their respective "liabilities" sections.

In the original affidavit, the liabilities were set out on the second page under columns labeled: "Creditor," "Balance Due," "Date Debt Incurred" and "Weekly Payment." The only liability listed in the original affidavit was set out as "[Internal Revenue Service] (See attached

Schedule A)"; however, no schedule A was attached to the affidavit. In the second affidavit, the same columns appeared on the page listing the defendant's liabilities. There were, however, two additional listings as well as no reference to a schedule A, although the Internal Revenue Service liability was still listed.[1] The two additional liabilities listed were: "KILM, [Inc.] v. Spilke," with a balance due of $165,000[2] and "Co-Op Fees to University Towers," with a balance due of $33,000.[3]

Both the original and the second affidavit also listed the defendant's assets. The defendant's assets and the figures pertaining to their value were identical on the two affidavits. Each affidavit listed various articles of personal property as assets, including a used car, household furnishings, computer and printing equipment and cameras that were valued in total at $8000. The affidavits also included the sources and amount of the defendant's income. The figures relating to the defendant's income and its sources were also identical in both the original and the second affidavit. The sources and amounts of income were listed on each affidavit as follows: estimated gross weekly wage from employment of $960 with weekly deductions of $25 for exhibit costs and $50 for printing costs with a net wage of $885.[4] There was no other source of income listed on either affidavit. The defendant's mother, however, annually deposited funds of approximately $50,000 into an account set up in both her name and the defendant's name, from which the defendant would make withdrawals. The defendant did not list this recurring gift in

---

[1] Neither affidavit listed a dollar amount regarding the Internal Revenue Service liability.

[2] According to the defendant, this debt stemmed from a mortgage foreclosure action that was then pending against both parties on a mortgage note from a loan that the defendant had taken in 1986 to purchase a condominium unit at University Towers in New Haven.

[3] According to the defendant, this debt was claimed by the University Towers condominium association for unpaid co-op fees.

[4] The defendant is an artist and photographer.

either financial affidavit as a source of income or as an asset. It was on the basis of the purported financial status of the defendant, in part, that the negotiated settlement of the parties was entered into and, subsequently, incorporated into the judgment of dissolution on July 30, 2003.

On July 27, 2005, the plaintiff filed a motion for contempt and to open and to vacate the judgment of dissolution because of fraud.[5] In that motion, she asserted that the defendant had made fraudulent misrepresentations on his financial affidavits, that his attorney had made various fraudulent misrepresentations to her during a pretrial hearing before Judge Gruendel that was held on July 28, 2003, and that the defendant had hidden income and assets through a business and personal relationship with his subsequent spouse. After the plaintiff filed a motion seeking extensive discovery, the court, *Frazzini, J.*, over a span of thirteen days between October, 2005, and May, 2007, pursuant to *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988),[6] held

---

[5] Although the motion was filed more than four months from the date of dissolution; see Practice Book § 17-4 (a); a trial court has inherent power to determine if fraud exists. See *Weinstein* v. *Weinstein*, 275 Conn. 671, 708, 882 A.2d 53 (2005).

The plaintiff's motion was entitled "Motion for Contempt—Post judgment—Motion to Vacate Divorce Judgment Agreement Dated July 30, 2003." The court noted that "[t]he text of the motion specifies that the plaintiff seeks a finding of contempt against the defendant and his attorney because of the defendant's having filed and pursued his motion for contempt . . . ." The record reveals that the defendant, on October 27, 2004, filed a motion for contempt, the substance of which is not pertinent to this appeal. That motion was denied by the court in a memorandum of decision filed October 14, 2005. The court also denied the plaintiff's motion insofar as it related to contempt, concluding that the defendant had legitimate reasons for pursuing his motion for contempt. The plaintiff did not appeal from that decision.

[6] This court has expressly rejected the premise that "a party seeking to open a judgment of dissolution on the basis of allegations of fraud has a right to conduct discovery based only on its filing of a motion to open. *Oneglia* v. *Oneglia*, [supra, 14 Conn. App. 269]. As we explained, [t]his is clearly an incorrect premise; until the court acts on a motion to open, the earlier judgment is still intact and neither our rules of practice nor our statutes provide for such a thing as postjudgment discovery. . . . If the

a hearing to determine whether there was sufficient basis to open the judgment for the limited purpose of proceeding with discovery on the plaintiff's claim of fraud. The court heard testimony from both parties, the defendant's attorney, an investigator retained by the plaintiff and a friend of the plaintiff. The court also allowed the parties to introduce exhibits and, by stipulation of the parties, considered the evidence submitted previously to the court on the defendant's postjudgment motion for contempt. See footnote 5. By memorandum of decision filed July 18, 2007, the court denied the plaintiff's motion, stating that "the judgment will not now be opened for the purpose of discovery or vacated for the purpose of a new trial." This appeal followed. Further facts will be set forth as necessary.

"Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court . . . to deny a motion to open a judgment. . . .

[party seeking to open the judgment] was able to substantiate [his] allegations of fraud beyond mere suspicion, then the court would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." (Internal quotation marks omitted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 247–48, 811 A.2d 256 (2002); see also *Nolan* v. *Nolan*, 76 Conn. App. 583, 585, 821 A.2d 772 (2003) (court conducted postjudgment probable cause hearing to determine whether any discovery, beyond parties' testimony, should be allowed in future to substantiate party's allegations of fraud).

Last, we note that a "hearing in probable cause is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Citation omitted; internal quotation marks omitted.) *Malave* v. *Ortiz*, 114 Conn. App. 414, 426, 970 A.2d 743 (2009).

In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Pospisil* v. *Pospisil*, 59 Conn. App. 446, 449, 757 A.2d 655, cert. denied, 254 Conn. 940, 761 A.2d 762 (2000).

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud. . . . A court's determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous. . . . There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the fraud; and (3) there is a substantial likelihood that the result of the new trial will be different." (Citations omitted; internal quotation marks omitted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 245–46, 811 A.2d 256 (2002). Moreover, our Supreme Court has stated that marital dissolution "cases have uniformly emphasized the need for full and frank disclosure in [a

financial] affidavit. A court is entitled to rely upon the truth and accuracy of sworn statements . . . and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. . . . These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence." (Citation omitted; internal quotation marks omitted.) *Billington* v. *Billington*, 220 Conn. 212, 219–20, 595 A.2d 1377 (1991).

First, the plaintiff argues that the court improperly found that she had failed to establish probable cause; see *footnote 6*; and that she reasonably relied on the defendant's fraudulent misrepresentation of his liabilities, and, therefore, the court abused its discretion in denying her motion to open and to vacate the dissolution judgment on that ground. Specifically, the plaintiff claims that the defendant and his attorney, by omitting the mortgage and co-op fees from the original affidavit, fraudulently concealed those liabilities from her. At the hearing on her motion to open and to vacate the judgment, the plaintiff testified that had she been made aware of those liabilities, she would have purchased the mortgage and pursued the defendant's liability on it. The court found the plaintiff's testimony not credible.

The court stated that the plaintiff had established that the original affidavit did contain factual errors in its omission of the mortgage and co-op fee liabilities. The court concluded, however, that the record clearly indicated that she "was fully aware of the true state of affairs." The court reviewed the transcript of the July 28, 2003 pretrial hearing that was held before Judge Gruendel and found that "[b]y the end of [that hearing], the defendant's attorney had fully disclosed to the court,

*in the plaintiff's presence,* the mortgage balance of approximately $175,000, the mortgage holder's willingness to compromise that claim and accept the lesser amount of $15,000 to satisfy the mortgage debt and the potential liability that the defendant might owe on the unpaid co-op fees." (Emphasis added.) Moreover, the court found that the record revealed that the plaintiff was a party to the mortgage foreclosure action and, therefore, had independent knowledge of the debt, as well as the holder's willingness to accept $15,000 in satisfaction of that debt and the co-op fee liability. As a result, the court concluded, there was no likelihood that the plaintiff actually and reasonably relied on the omission in the defendant's original affidavit. The court, therefore, denied the plaintiff's motion to open and to vacate the dissolution judgment on this ground. We also note that by rejecting the plaintiff's testimony concerning the mortgage and co-op fee liability, the court made a credibility determination, which we will not disturb on appeal. See *Billington* v. *Billington,* 27 Conn. App. 466, 469, 606 A.2d 737 (contours of determination of credibility uniquely shaped by trial court and not reviewable on appeal), cert. denied, 224 Conn. 906, 615 A.2d 1047 (1992). Moreover, our review of the record indicates that the court did not abuse its discretion in refusing to open the judgment on this purported ground of fraud.

The plaintiff also claims that the defendant misrepresented the amount and sources of his income and assets on both the original and the second affidavits. This claim involves the defendant's purported income and the recurring gifts of money received by the defendant from his mother by way of a joint account, the fact of which was not stated expressly on either affidavit. This claim fails for much the same reason as the plaintiff's previous claim. At the July 28, 2003 hearing before Judge

Gruendel, the defendant's attorney, again, in the plaintiff's presence, indicated that the source of the purported $960 weekly gross income was a recurring gift of money from the defendant's mother. During her testimony before the court on her motion to open and to vacate the judgment, the plaintiff testified that when she heard the defendant's attorney state that the defendant's income derived from his mother's gifts, she realized that this income might be the source of the income listed on the original affidavit. She further testified that she made a tactical decision not to pursue further discovery on the matter. The court concluded that the evidence, including the plaintiff's testimony during the hearing on the motion, established that the plaintiff had in no way relied on either the purported inaccuracies in the affidavits or the representations of the defendant's attorney at the pretrial hearing and, therefore, she had failed to establish a required element of fraud. On the basis of our review of the record, we conclude that the court in making this determination did not abuse its discretion.

Last, the plaintiff claims that the defendant hid assets and income through his personal and business relationship with Jennifer Ballard.[7] The following additional facts are relevant to the plaintiff's claim. In the late 1980s, the defendant went to Israel, leaving the plaintiff to care for their three children. Subsequently, he obtained an annulment of his marriage to the plaintiff and began a relationship with Ballard, eventually marrying her in a civil ceremony in Israel. The defendant worked as a photographer and artist and operated a greeting card business. A portion of the greeting card business involved the production of collaborative artworks with Ballard. In the late 1990s, the couple decided to return to the United States. The defendant testified at the hearing to open and to vacate the judgment, that

---

[7] Ballard went by the Hebrew name Yona Levy as well.

to induce Ballard into leaving her position as a teacher in Israel and, therefore, to lose her pension, he gave her all of his art inventory except for the negatives and digital copies of his photographs and agreed to help her to start a business called Bezalel-Levy, LLC. After their arrival in the United States, Ballard and the defendant continued to collaborate on artwork, as well as produce artworks independently, and offered them for sale on the new business' Internet site. Ballard received all the proceeds from the sales of the artworks by the business.

The defendant did not list any interest in any artwork in his original or his second affidavit. During his testimony at the hearing on the motion to open and to vacate the judgment, the defendant acknowledged that at the time of the dissolution, he still owned the negatives and digital copies of his photographs as well as a one-half interest in approximately 100 pieces of artwork he collaborated on with Ballard since 1999. He further testified that he did not list them on either financial affidavit because he believed that they had no value, as he had not been successful in selling his art. He, however, admitted that he should have listed them at a value between $15,000 and $20,000 in total on the basis of his estimate as to their worth if he was successful in selling them.[8]

The court concluded that the evidence did establish by probable cause the first three elements of fraud on the part of the defendant. See *Mattson* v. *Mattson*, supra, 74 Conn. App. 245. On the basis of the plaintiff's

---

[8] Although we are affirming the decision of the court, we nonetheless do not condone the defendant's admitted misrepresentation of financial information by the omission of these assets in sworn affidavits submitted to the plaintiff and to the court. We cannot overemphasize the importance of the representations made in financial affidavits by parties to a dispute before a court not only to the resolution of the matter at hand, but to the entire judicial process. *Billington* v. *Billington*, supra, 220 Conn. 219–20.

testimony at the hearing on her motion to open and to vacate the judgment, among other things, the court concluded that the evidence also established that the plaintiff did not, in fact, rely on the defendant's affidavits or his attorney's statements regarding his income, assets or liabilities. The plaintiff testified that, after the July 28, 2003 pretrial hearing, she could not believe anything that the defendant or his attorney represented about his income and assets. Moreover, she testified that because of her purported inability to trust the financial disclosures presented to her, she considered abandoning settlement negotiations and proceeding to trial on the matter. She, however, made the strategic decision to forgo further investigation or trial and to settle the case. That decision was based on several factors, including her fear that had she proceeded to trial, the defendant would have declared bankruptcy. She also was motivated by the worry that, if she proceeded to trial, the court might conclude that the Israeli annulment was valid. The plaintiff testified that another concern that motivated her decision was the potential effect that a full trial might have on one of the parties' sons. Under these circumstances, we cannot say that the court improperly concluded that the plaintiff had failed to establish the element of reliance and, therefore, abused its discretion in denying her motion to open and to vacate the judgment of dissolution. We conclude that, because the plaintiff was unable to meet the minimal evidentiary threshold of establishing her allegations of fraud beyond a mere suspicion, the court's ruling was proper. See id., 248; *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 269.

The judgment is affirmed.

In this opinion the other judges concurred.