DALE J. HOGAN ET AL. *v.* TERESA B. LAGOSZ
(AC 35028)

Robinson, Sheldon and Harper, Js.

Argued October 10—officially released December 31, 2013

*Jonathan M. Starble*, with whom, on the brief, was *Brooke M. Meling*, for the appellant (defendant).

*Kevin M. O'Brien*, with whom was *Neil E. Atlas*, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. The defendant, Teresa B. Lagosz,[1] appeals from the judgment of the trial court rendered on the motion of the plaintiffs, Dale J. Hogan and Maria J. Hogan, to give full force and effect to an out-of-court settlement agreement and to the court's November 7, 2008 decision enforcing that settlement agreement. The defendant claims that the court (1) lacked the jurisdiction or the authority to render its decision, (2) lacked

---

[1] The plaintiffs' amended complaint named Jacqueline Root, Cass Witkowski, Eleanor Dyer and Rose Davis as additional defendants. They were cited in after the case commenced. In this opinion, we will refer to Root, Witkowski, Dyer and Davis collectively as the sellers and to Lagosz as the defendant.

the authority under *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993), and its progeny to grant the relief set forth in the decision, and (3) improperly imposed new settlement terms that are inconsistent with or go beyond the scope of the terms of the parties' settlement agreement as construed by the court in its November 7, 2008 decision. We disagree and affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of the present appeal. "On May 26, 2005, the sellers by warranty deed conveyed to the plaintiffs two vacant lots located in Berlin. Known as 'Lot 27 Norton Lane' and 'Lot 28A Norton Lane,' they sat to the rear of 468 Norton Lane (parcel), which, at all relevant times, was owned by the defendant. It is undisputed that the lots are landlocked.

"In dispute was whether the parcel was subject to an easement bridging the lots to Norton Lane. On February 24, 2006, the plaintiffs commenced an action against the defendant, alleging that the parcel was subject to a right-of-way described on the Berlin land records as '20′ Access Easement in favor of Lot 28A.' They further alleged that, in maintaining a locked gate across the right-of-way, the defendant obstructed their use thereof. In response, the defendant filed an answer and two special defenses, in which she averred that the alleged right-of-way had been lost by abandonment or adverse possession. Because the warranty deed provided that the sellers conveyed 'all rights of way to the [r]oadway, known as Norton Lane,' the plaintiffs thereafter cited in the sellers as additional defendants to recover damages for breach of warranty under that deed.

"The parties appeared for trial on the morning of March 5, 2008, at which time a settlement discussion ensued among their attorneys. The parties reached an

agreement in principle and thus requested a thirty day continuance to 'finalize the documentation' that was to be incorporated into the stipulated judgment, which the court, *Hon. Julius J. Kremski*, judge trial referee, granted. The parties and their attorneys remained in the courtroom after Judge Kremski departed, and the settlement discussion continued. As that discussion transpired, surveyor John L. Guilmartin, Jr., who had been scheduled to testify at the proceeding, arrived. The parties and their attorneys met with Guilmartin to discuss placement of an easement over the parcel as shown on an existing survey prepared in November, 2007, for the state by Eric Seitz Land Surveying, Inc. (existing survey). They instructed Guilmartin to modify the right-of-way depicted on that survey so as to traverse the southern portion of the parcel and to remain approximately one foot from that property line. As the defendant stood beside him, the defendant's husband, Joseph Lagosz, drew a line on the survey with his finger as to the location of the new right-of-way.

"While Joseph Lagosz detailed the location of the right-of-way, counsel for the defendant, attorney Jack M. Bassett, drafted a handwritten document titled 'Essential Terms of Agreement' (agreement). It provides: '1. [The defendant] will agree to granting a [twenty foot] wide [right-of-way] from the gate positioned at [the railroad] tracks/Norton Lane to the [plaintiffs'] premises, Lot 28A, subject to placement by agreement (ingress and egress). 2. The parties will cooperate in defining the placement of the [right-of-way] by the plaintiffs' surveyor as closely as possible in keeping with the outline sketch placed upon a copy of the [existing survey] in court today. 3. The parties will maintain insurance coverage pertaining to their respective insurable interests on the subject [right-of-way] area. 4. [The sellers] agree to pay the sum of $5000 to [the defendant's] counsel as trustee within ninety days of

the date hereof. 5. The parties will not unreasonably park cars upon or otherwise impede the [right-of-way]. 6. [The] plaintiffs, at their sole expense, will pay for the preparation and filing of the map or plan depicting the newly defined [right-of-way] area. 7. The parties will share reasonable costs in the portion of the [right-of-way] mutually utilized, with the plaintiffs bearing sole responsibility for the maintenance in the travel portion pertaining to their remaining area. 8. The parties agree to keep the gate at Norton Lane in place, locked with a combination lock with the combination to be shared. The parties will only share the combination reasonably in a limited fashion with appropriate business and personal invitees and licensees of the parties. In the event that unintended access abuses are observed, either party can change the combination with required immediate provision of the new number to the other.' The respective attorneys for the plaintiffs, the defendant and the sellers signed the agreement at that time.

"In the following weeks, counsel for the plaintiffs drafted a stipulated judgment and an easement for the defendant's review. In addition, Guilmartin prepared a survey, consistent with the instructions provided to him on March 5, 2008, that featured the new right-of-way across the parcel. Those documents were forwarded to Bassett. On April 17, 2008, Bassett scheduled a meeting at his office with Joseph Lagosz to review those materials, at which time Joseph Lagosz informed him of the termination of his services by the defendant. Six days later, attorney Jonathan M. Starble filed an appearance on behalf of the defendant in lieu of Bassett.

"On April 24, 2008, the plaintiffs filed a motion to enforce the agreement. The court [*Gilligan, J.*] held an evidentiary hearing on the matter on May 22, 2008. Guilmartin, Bassett and Dale J. Hogan testified in support of the motion, while the defendant testified in

opposition. In addition, documentary evidence was submitted and the parties filed posthearing briefs. In its November 7, 2008 memorandum of decision, the court expressly credited the testimony of Bassett and Guilmartin, stating that '[a]t all times, the court found the witnesses . . . Bassett and Guilmartin to be competent and their testimony to be believable and credible.' The court rejected the defendant's contention that Bassett lacked authority to sign the agreement on her behalf. Finding the language of the agreement clear and unambiguous, the court further found it to be 'a binding settlement agreement.' In addition, the court found that 'the parties manifested their agreement as to the location of the right-of-way and directed the surveyor to depict its location on the survey, which he prepared in accordance with their instructions.' At the same time, the court noted that '[t]o the extent that the survey prepared by Guilmartin or the terms of the ancillary legal documents *directly* conflict with the terms of the agreement as found by this court, any such terms are not permitted, absent agreement of the parties.' . . . The court thus retained jurisdiction 'over this matter until the parties have filed, no later than forty-five days from the date hereof, such stipulations and documentation as the court deems necessary to give full force and effect to the agreement.' " (Emphasis in original; footnotes omitted.) *Hogan* v. *Lagosz*, 124 Conn. App. 602, 604–608, 6 A.3d 112 (2010), cert. denied, 299 Conn. 923, 11 A.3d 151 (2011).

The defendant appealed to this court from the trial court's November 7, 2008 decision, and no stipulations or documentation were filed with the trial court. This court affirmed the trial court's decision on the motion to enforce, holding, inter alia, that there was sufficient evidence to support the court's findings that the defendant's attorney had apparent authority to sign a binding settlement agreement, and that the settlement

agreement was clear and unambiguous as to the location of the new right-of-way. Id., 612, 614. Our Supreme Court denied the defendant's petition for certification to appeal this court's decision on January 4, 2011.

On May 18, 2012, the plaintiffs filed a motion with the trial court "to give full force and effect to [the] settlement agreement." The plaintiffs stated in the motion that they had commissioned a survey to place the right-of-way on a map in accordance with the description of the location of the right-of-way as set forth in this court's opinion. The plaintiffs asked the court, "in keeping with its decision of November 7, 2008, to make the necessary findings to give full force and effect to the decision of this court by approving all necessary documents, including maps, easements and rights of way for recording in the land records of the town of Berlin." The defendant filed an objection to the motion in which she argued that the court improperly had retained jurisdiction and ordered further proceedings or actions by the parties, that even if the court properly retained jurisdiction, such jurisdiction had ceased by its own terms forty-five days after the November 7, 2008 decision, and that the plaintiffs' motion must be denied because it failed to specify the relief requested and the basis upon which any proposed relief could be granted.

The court, *Sweinton, J.*, heard argument on the motion on July 9, 2012. On that same date, the plaintiffs filed proposed orders and the survey map depicting the location of the right-of-way. On August 12, 2012, the court issued a memorandum of decision finding that the survey map submitted by the plaintiffs was in compliance with the location of the easement as agreed to by the parties and as described in this court's opinion and that the proposed orders were in accordance with the terms of the settlement agreement. On the basis of those findings, the court entered the following orders:

"1. The plaintiffs shall record the [survey map depicting the location of the right-of-way] with the Berlin Town Clerk. 2. The plaintiffs shall have a perpetual easement over that portion of [the parcel] as described on said map. 3. The plaintiffs and the defendant shall maintain insurance coverage pertaining to their respective insurable interest in the subject right-of-way area. 4. The plaintiffs and the defendant shall not unreasonably park cars upon or otherwise impede the right-of-way. 5. The plaintiffs and the defendant shall share reasonable maintenance costs in the portion of the right-of-way mutually utilized by the parties, with the plaintiffs bearing sole responsibility for the maintenance in the travel portion pertaining to their remaining area. 6. The plaintiffs and the defendant agree to keep the gate, as depicted on the above-referenced map, locked with a combination lock with the combination to be shared. The plaintiffs and the defendant shall only share the combination to the lock reasonably, in a limited fashion, with the appropriate business and personal invitees and licensees of the parties. 7. In the event that unintended access abuses are observed, either party may change the combination to the lock, provided the other is immediately provided with the new combination numbers." This appeal followed.

I

The defendant's primary claim on appeal is that the court lacked the jurisdiction or the authority to render its August 12, 2012 decision. In particular, the defendant argues that, pursuant to the terms of the court's November 7, 2008 order on the plaintiffs' motion to enforce the parties' settlement agreement, the court only retained jurisdiction for an additional forty-five days. The defendant suggests that the court lost any jurisdiction that it retained after the forty-five days had passed, or that because of the ensuing appeal of the November 7, 2008 order, the court lost jurisdiction, at the latest, forty-five

days after the Supreme Court denied her petition for certification to appeal this court's opinion affirming the November 7, 2008 order. The defendant also argues that because the plaintiffs' motion to give full force and effect to the settlement agreement was filed more than four months after the court's November 7, 2008 order, the court also lacked the authority to render its decision pursuant to General Statutes § 52-212a and Practice Book § 17-4. The plaintiffs respond that the defendant has misinterpreted the November 7, 2008 order, that the court never lost its inherent authority to vindicate its November 7, 2008 decision, and that, because the motion to give full force and effect to the settlement agreement did not seek to open or modify substantively the November 7, 2008 decision, § 52-212a and Practice Book § 17-4 are inapplicable. We agree with the plaintiffs.

We begin by setting forth the standard of review that governs our consideration of the defendant's claim. "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956 (2013). Further, to the extent that we are required to construe the meaning of a court's order or to determine the applicability of a statutory provision, we also apply a plenary standard of review. See *Perry* v. *Perry*, 130 Conn. App. 720, 724, 24 A.3d 1269 (2011); *Florian* v. *Lenge*, 91 Conn. App. 268, 278, 880 A.2d 985 (2005). "As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which is clearly implied as well as to that which

is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Perry* v. *Perry*, supra, 724.

## A

The defendant first argues that the court, by the terms of its November 7, 2008 order, only retained jurisdiction over this matter for an additional forty-five days. She further contends that, even assuming that the running of those forty-five days was tolled due to her appeal of the November 7, 2008 order, any such tolling would have ended on January 4, 2011, when the Supreme Court denied her petition for certification to appeal from this court's decision affirming the order. She thus suggests that the court lost jurisdiction over this matter, at the latest, on February 25, 2011, and, accordingly, the court lacked jurisdiction to consider the plaintiffs' motion to give full force and effect, which was not filed until May 18, 2012. We are not persuaded.

We first look to the language that the court used in the November 7, 2008 memorandum of decision on the motion to enforce the parties' settlement agreement. The court ends the decision by stating that it would "retain jurisdiction over this matter until the parties have filed, *no later than forty-five days from the date hereof*, such stipulations and documentation as the [c]ourt deems necessary to give full force and effect to the [a]greement." (Emphasis added.) It is plain from the language used by the court that the phrase "no later than forty-five days from the date hereof" is not, as suggested by the defendant, a qualifier of the length of time the court retained jurisdiction. Rather, it modifies the phrase "until the parties have filed," thus indicating the court's intention that the parties file the documents necessary to give effect to the court's ruling within forty-five days. Accordingly, we reject the suggestion

that the court's jurisdiction was somehow curtailed solely by the terms of the court's own order.

It is axiomatic that part of a trial court's inherent powers is the continuing jurisdiction to clarify ambiguous orders and "to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 243, 796 A.2d 1164 (2002). Such continuing jurisdiction is derived from the court's equitable authority to vindicate judgments. Id. Our Supreme Court has determined that "the trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." Id., 246.

In the present case, even if the court had failed to state that it was retaining jurisdiction or had stated that it was retaining jurisdiction only for a specific period of time, as suggested by the defendant, the court nevertheless had continuing jurisdiction to consider the plaintiffs' motion pursuant to its inherent powers because that motion sought to effectuate the court's prior order instructing the parties to file whatever documentation was necessary to give full force and effect to the parties' stipulated agreement concerning the subject easement. The court certainly had the authority to render any additional relief or orders necessary to vindicate the settlement agreement and its prior ruling seeking to enforce that agreement. The defendant's argument to the contrary lacks merit.

## B

The other argument asserted by the defendant is that the court lacked the authority to consider the plaintiffs' motion pursuant to General Statutes § 52-212a and Practice Book § 17-4, because the motion was filed more than four months after the November 7, 2008 order was rendered. Because we conclude that the plaintiffs' motion did not seek to open or to substantively modify the court's November 7, 2008 ruling, but merely sought to effectuate it, we conclude that this argument also lacks merit.

Section 52-212a provides in relevant part: "Unless otherwise provided by law *and except in such cases in which the court has continuing jurisdiction,* a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed." (Emphasis added.) Practice Book § 17-4 (a) contains substantially similar language. Even when a postjudgment motion is not styled as a motion to open the judgment, a court's action on that motion nevertheless could be violative of § 52-212a if, outside the four month statutory period, the court substantively modifies the judgment. See *Commissioner of Transportation* v. *Rocky Mountain, LLC,* 277 Conn. 696, 705–706, 894 A.2d 285 (2006). As explained previously in this opinion, however, additional orders and modifications necessary to vindicate a prior order fall within the court's continuing jurisdiction and therefore are specifically excepted from the four month rule. See *Rocque* v. *Light Sources, Inc.,* 275 Conn. 420, 432–33, 881 A.2d 230 (2005). The defendant nevertheless takes issue with two aspects of the court's August 12, 2012 order: its requirement that the easement map filed by the plaintiffs be recorded and its statement that the plaintiffs have a perpetual easement as described by the map. According to the defendant,

because neither aspect was a part of the court's original enforcement order, they are prohibited substantive modifications. We disagree.

In its November 7, 2008 decision, the court determined that the parties had entered into an unambiguous and binding agreement to settle their dispute regarding access to the plaintiffs' landlocked parcels by way of an easement over the defendant's property. The court recognized that a map or survey depicting the location of the easement as agreed upon by the parties was necessary to any meaningful settlement of the parties' dispute and that other "ancillary legal documents" might also be necessary to give full force and effect to the parties' agreement. The court's order did not directly state the type of documents that the parties should file with the court, whether the court anticipated that further orders might be appropriate once documents were filed with the court or what actions the court might take should the parties fail to agree as to the type and contents of such documents or to comply with the court's order that they be filed within forty-five days. Nevertheless, as explained previously, the court had continuing jurisdiction to clarify any ambiguities and to vindicate both the settlement agreement and the court's prior decision enforcing that agreement, which in the present case necessarily included the authority to determine that documents filed in accordance with its prior order complied with the settlement agreement and were necessary to give full force and effect to that agreement. More importantly, it was within the court's power to issue additional orders consistent with and in vindication of the parties' settlement agreement.

We agree with the defendant that the court's August 12, 2012 decision included orders not found in the court's November 7, 2008 decision, particularly those

requiring the plaintiffs to record the easement map submitted to the court and stating that the plaintiffs "shall have a perpetual easement" over the defendant's property. We do not agree, however, that those orders were substantive modifications of the November 7, 2008 decision. "[A]n easement implies an interest in land, which ordinarily is created by grant and is permanent . . . ." (Internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 440, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996). It was never in dispute before the trial court that the parties intended to create anything other than a permanent easement that would run with the land. The first term of the parties' handwritten agreement, which was the basis for the court's initial enforcement orders, indicated that the easement was "to run with the land with granting terms." The court therefore did not expand upon or modify the parties' settlement agreement or its prior enforcement order by clarifying that the plaintiffs "shall have a perpetual easement." Further, it is "the policy of our law that all interests in land shall, as far as practicable, appear on the land records so that they may be easily and accurately traced . . . ." (Internal quotation marks omitted.) *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 401, 877 A.2d 891 (2005), citing *Hawley* v. *McCabe*, 117 Conn. 558, 564, 169 A. 192 (1933). In the November 7, 2008 memorandum of decision, the court found that one of the terms of the parties' settlement agreement was that "necessary documents *for the land record* were to be prepared *and recorded on the land records* at the plaintiffs' expense." (Emphasis added.) It necessarily was implied, therefore, that any map or survey depicting the easement that would later be filed with the court would need to be recorded upon the land records. On the basis of our review of the record as a whole, we conclude that the court's August 12, 2012 orders, rather

than being substantive modifications of any aspect of the court's prior decision, were logical extensions of the court's prior ruling. As such, neither § 52-212a nor Practice Book § 17-4 is applicable, and we are not persuaded by the defendant's arguments to the contrary.

## II

The defendant next claims that the court lacked the authority under *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 804, and its progeny, to grant the relief set forth in the August 12, 2012 decision. As previously stated, our review of challenges to the authority of the court to act is plenary. *Tarro* v. *Mastriani Realty, LLC*, supra, 142 Conn. App. 431.

"A hearing pursuant to *Audubon Parking Associates Ltd. Partnership* . . . is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 499 n.5, 4 A.3d 288 (2010). The defendant argues that the court's "*Audubon* powers" were limited to ruling on the first motion to enforce the settlement agreement and that the court had no inherent authority to take any further action once it had issued its November 7, 2008 decision. The defendant reasons that once a court has found the terms of a settlement agreement clear and unambiguous and rendered a judgment enforcing the agreement, the court would never have occasion to enforce the agreement a second time unless a party expressly violated a term of the agreement. As we fully articulated in part I A of this opinion, however, a court has continuing authority to render additional orders necessary to give full force and effect to an earlier decision, including a decision to enforce an out-of-court settlement agreement, pursuant to its inherent powers to vindicate judgments. We

have determined that the court properly exercised that authority in rendering its August 12, 2012 decision. Further, we can find no language in *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 804 or in the cases cited by the defendant that would interfere with or limit a court's proper exercise of that continuing authority. Accordingly, we reject the defendant's claim.

### III

Finally, the defendant claims that even if the court had the jurisdiction and authority to render the August 12, 2012 decision, the court improperly imposed new settlement terms that are inconsistent with or go beyond the scope of the terms of the parties' settlement agreement as found by the court in its November 7, 2008 decision. In support of the claim, the defendant again refers to the court's orders that the plaintiffs record their easement map and that they have a perpetual easement over the defendant's property as indicated on the map. We do not agree.

In part I B of this opinion, we rejected the defendant's characterization of the August 12, 2012 orders as having substantively modified or imposed terms in conflict with either the parties' original settlement agreement or the November 7, 2008 orders. We determined that the court's orders that the map be recorded on the land records and that the easement be permanent are not in conflict with and, in fact, are consistent with the parties' settlement agreement. The additional orders rendered on August 12, 2012, were necessary to give full force and effect to the parties' agreement. The record simply does not support the defendant's contrary assertion that the orders are inconsistent with or go beyond the scope of the terms of the parties' settlement agreement, and, therefore, her claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.