******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FELICIA PIEROT BRODY *v.* CARY BRODY
(AC 36640)

Gruendel, Alvord and Borden, Js.

*Submitted on briefs September 18—officially released November 4, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Emons, J.)

*Eric M. Higgins* and *Jill D. Bicks* filed a brief for
the plaintiff in error (Lara Brody).

*Opinion*

GRUENDEL, J. This appeal is but another chapter in a contentious dissolution saga. It concerns the trial court's authority to allow discovery in the context of a pending postjudgment motion for contempt. The plaintiff in error, Lara Brody (Brody), is the sister of the defendant in the underlying case, Cary Brody (defendant). See *Brody* v. *Brody*, 136 Conn. App. 773, 781, 51 A.3d 1121, cert. granted, 307 Conn. 910, 53 A.3d 998 (2012). Brody brought this writ of error from an order of the trial court requiring her to comply with a subpoena duces tecum issued by Felicia Pierot Brody, the plaintiff in the underlying case (plaintiff), in connection with her motion for contempt alleging fraudulent conduct on the part of the defendant.[1] Brody contends that the court improperly denied her motions for a protective order and to quash that subpoena because it lacked authority to allow such discovery without first substantiating the plaintiff's allegations of fraud beyond mere suspicion in a court hearing, consistent with *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988), and its progeny. We disagree and, accordingly, dismiss the writ of error.

The relevant facts are not in dispute. In March, 2010, the court rendered a judgment dissolving the parties' marriage and entered various financial orders. On December 9, 2011, the court found the defendant in contempt for his failure to pay two lump sum payments of alimony totaling $2 million, $15,000 in health care expenses, and $175,000 of proceeds from a loan jointly made by the plaintiff and the defendant to a third party. This court affirmed that judgment of contempt on appeal. *Brody* v. *Brody*, 145 Conn. App. 654, 658, 661–64, 77 A.3d 156 (2013).

In January, 2013, the defendant filed a motion to open the underlying judgment. Both the plaintiff and the defendant thereafter filed postjudgment motions for contempt. Pertinent to this appeal is the plaintiff's July 24, 2013 motion for contempt, which alleged in relevant part that "[a]mong the sanctions imposed by [the court as part of its December 9, 2011 finding of contempt] were that the defendant was to pay the plaintiff 50 percent of all income earned by him, to be credited against the defendant's alimony obligation; and that he was to pay 75 percent of other distributions to the plaintiff. . . . [U]pon information and belief the defendant has had income for which he has failed to make payments to the plaintiff as required by the existing orders entered . . . and he has received distributions that he has not shared with the plaintiff."

Approximately two weeks later while her motion for contempt was pending, the plaintiff on August 6, 2013, served Brody with a subpoena duces tecum requiring her to produce certain documents and to appear at a

deposition the following month.[2] Brody is the manager of a hedge fund firm in Greenwich that, at all relevant times, employed the defendant. As the plaintiff's counsel stated at argument before the trial court: "[The subpoena was served on Brody] in connection with [the defendant's] continuing obligations, pursuant to a contempt finding of December 9, 2011 . . . in which [the court] ordered [that] the defendant shall pay the plaintiff 50 percent of all his net earnings as they're received towards the sums due. . . . He shall also pay her 75 percent of all return on investments and payment of capital." Counsel for the plaintiff continued: "To say that [the defendant's] financial dealings are not transparent is a profound understatement. . . . I want records of any and all transactions in which [the defendant] is involved. If [Brody's firm] does trading, and [the defendant] is a trader, I want to see his trading records. If [the defendant] has the right to either charge or be reimbursed for alleged business expenses, I want to see what they are."

On August 30, 2013, Brody filed a motion to quash the subpoena and a motion for a protective order.[3] After hearing argument from the parties on September 23, 2013, the court denied those motions. Brody filed this writ of error challenging the propriety of that determination on October 11, 2013.[4]

On appeal, Brody claims that the court improperly denied her motions to quash and for a protective order. As she posits in her writ of error, "there is no general right to postjudgment discovery in Connecticut . . . [and] no authority exists to justify a different rule simply because motions for sanctions are pending."[5] (Citations omitted.) Because the court did not conduct a hearing pursuant to *Oneglia* prior to denying her motions, Brody argues that the court lacked the authority to allow the plaintiff to engage in postjudgment discovery. Her claim presents an issue of law over which our review is plenary. See *Hogan* v. *Lagosz*, 147 Conn. App. 418, 433, 84 A.3d 434 (2013) ("our review of challenges to the authority of the court to act is plenary"); *Bruno* v. *Bruno*, 146 Conn. App. 214, 229–33, 76 A.3d 725 (2013) (engaging in plenary review of question of whether court lacked authority to allow postjudgment discovery).

I

Our analysis thus begins with a discussion of *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 267, the seminal case on which Brody principally relies. *Oneglia* concerns the authority of a trial court to act on a request for postjudgment discovery pertaining to allegedly fraudulent conduct that transpired *prior* to the entry of the underlying judgment.

Under Connecticut law, although a motion to open a judgment normally "must be filed within four months

of entry of the judgment; General Statutes § 52-212 (a); a motion to open on the basis of fraud is not subject to this limitation  . . . ." *Konefal* v. *Konefal*, 107 Conn. App. 354, 359 n.5, 945 A.2d 484, cert. denied, 288 Conn. 902, 952 A.2d 810 (2008). In *Oneglia*, this court rejected a claim that a party, following the entry of a judgment of dissolution, "had a right to conduct discovery and to compel the defendant to testify, based *only* on [the] filing of a motion to open." (Emphasis added.) *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 269. The court explained that "[t]his is clearly an incorrect premise; until the court acts on a motion to open, the earlier judgment is still intact and neither our rules of practice nor our statutes provide for such a thing as postjudgment discovery." Id. The court also noted that both General Statutes § 52-197 (a) and Practice Book § 218 [now § 13-2] authorize a party to engage in discovery "[i]n any civil action," stating that "[u]ntil and unless the trial court opened the previous judgment, there could be no 'civil action' within the meaning of [those provisions]." *Oneglia* v. *Oneglia*, supra, 269–70 n.2.

*Oneglia* and its progeny are grounded in the principle of the finality of judgments. See, e.g., *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013) ("[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments" [internal quotation marks omitted]); *Sawicki* v. *New Britain General Hospital*, 302 Conn. 514, 522, 29 A.3d 453 (2011) ("[t]he [courts have] a strong interest in the finality of judgments" [internal quotation marks omitted]). As we stated in *Bruno* v. *Bruno*, supra, 146 Conn. App. 229, the finality of judgments principle recognizes "the interest of the public as well as that of the parties [that] there be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligations to act further by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on." (Citation omitted; internal quotation marks omitted.) *Oneglia* carefully balanced that interest in finality with the reality that "in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity." *Kim* v. *Magnotta*, 249 Conn. 94, 109, 733 A.2d 809 (1999). The court in *Oneglia* thus ratified the gatekeeping mechanism employed by the trial court, whereby a court presented with a motion to open by a party alleging fraud in a postjudgment dissolution proceeding conducts a preliminary hearing to determine whether the allegations are substantiated. See *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 269–70. The court held that "[i]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court [properly] would open the judgment for the limited purpose of discovery,

and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." Id., 270; accord *Spilke* v. *Spilke*, 116 Conn. App. 590, 600, 976 A.2d 69 (court properly denied motion to open "because the plaintiff was unable to meet the minimal evidentiary threshold of establishing her allegations of fraud beyond a mere suspicion"), cert. denied, 294 Conn. 918, 984 A.2d 68 (2009); *Nolan* v. *Nolan*, 76 Conn. App. 583, 585, 586, 821 A.2d 772 (2003) (same); *Mattson* v. *Mattson*, 74 Conn. App. 242, 248, 811 A.2d 256 (2002) (same).[6] Notably, *Oneglia*, *Spilke*, *Nolan* and *Mattson* all involved allegations of fraudulent conduct with respect to financial disclosures and affidavits filed prior to the entry of a judgment of dissolution. See *Spilke* v. *Spilke*, supra, 591, 593; *Nolan* v. *Nolan*, supra, 584; *Mattson* v. *Mattson*, supra, 243; *Oneglia* v. *Oneglia*, supra, 268.

This court recently revisited that precedent in *Bruno* v. *Bruno*, supra, 146 Conn. App. 214.[7] The principal issue in that appeal was "whether the trial court erred by permitting the plaintiff [husband], and his current wife . . . to obtain discovery upon their filing of motions to open . . . on the basis of alleged fraudulent conduct on the part of the defendant [wife] without first substantiating their allegations of her fraud beyond mere suspicion in a court hearing." Id., 216. The defendant maintained that the trial court lacked "authority to permit [postjudgment] discovery without first making a preliminary finding." Id., 229. This court agreed, holding, consistent with *Oneglia*: "Until a motion to open has been granted, the earlier judgment is unaffected, which means that there is no active civil matter. . . . In this postjudgment posture, discovery is not available to the moving party for the simple reason that discovery is permitted only when a cause of action is pending." (Citation omitted.) Id., 230–31. The court then articulated the proper mechanism by which such postjudgment discovery may be permitted, stating: "In considering a motion to open the judgment on the basis of fraud . . . the trial court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery." (Citations omitted; internal quotation marks omitted.) Id., 231. Because the trial court in that case did not first determine "that the allegations of fraud undergirding the motions to open had some minimal indicia of merit," we concluded that the court "lacked the authority to allow [postjudgment] discovery." Id., 233.

Accordingly, a party seeking to obtain discovery related to allegedly fraudulent conduct that transpired prior to the entry of judgment must, consistent with the aforementioned precedent, (1) move to open that judgment and (2) demonstrate to the trial court that the allegations of fraud are founded on probable cause. Absent such evidence, the court lacks authority to permit postjudgment discovery on such matters.

## II

It nevertheless remains that the plaintiff served the subpoena on Brody in connection with a pending motion for contempt pertaining to fraudulent conduct that allegedly transpired *after* the entry of judgment and involved noncompliance with the court's outstanding orders.[8] The procedural posture of the present case distinguishes it from *Oneglia*, and demands a different analysis of the court's authority to act.

Motions for contempt implicate the court's inherent equitable authority to effectuate and vindicate its judgments. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002); accord *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 766 n.12, 48 A.3d 16 (2012) ("[t]he contempt penalty is one of the court's most important and deeply rooted enforcement powers"); *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 530, 803 A.2d 311 (2002) ("purpose of the contempt power is to enable a court to preserve its dignity and to protect its proceedings" [internal quotation marks omitted]). As we recently explained: "Although ordinarily our trial courts lack jurisdiction to act in a case after the passage of four months from the date of judgment; see General Statutes § 52-212a; there are exceptions. One exception arises when the exercise of jurisdiction is necessary to effectuate prior judgments or otherwise enforceable orders. . . . [Our Supreme Court has rejected a] hypertechnical understanding of the trial court's continuing jurisdiction to effectuate prior judgments. . . . [T]he trial court's continuing jurisdiction is not separate from, but, rather, derives from, its equitable authority to vindicate judgments. . . . [S]uch equitable authority . . . [derives] from its inherent powers. . . . [T]he trial court's continuing jurisdiction to effectuate its prior judgments . . . is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." (Citation omitted; internal quotation marks omitted.) *Rozbicki* v. *Gisselbrecht*, 152 Conn. App. 840, 846–47,    A.3d    (2014).

*Oneglia* and its progeny do not implicate the trial court's continuing jurisdiction to effectuate its outstanding orders, but rather deal with allegations that an underlying judgment has been procured by fraud.

For that reason, this court has held that a party may only engage in what we termed "postjudgment discovery" after the party first moves to open the judgment and establishes the allegations of fraud beyond mere suspicion. *Oneglia* v. *Oneglia,* supra, 14 Conn. App. 269–70; *Bruno* v. *Bruno,* supra, 146 Conn. App. 230–31.

By contrast, the present case plainly involves the court's continuing jurisdiction to effectuate and vindicate outstanding orders. The plaintiff's allegations of fraud arise from conduct *subsequent* to the entry of judgment and involve the defendant's allegedly wilful noncompliance with the court's outstanding orders. For that reason, no motion to open was needed to confer authority on the trial court to allow discovery, as the court's continuing jurisdiction over the matter necessarily conveyed upon it the authority to do so. See *Rozbicki* v. *Gisselbrecht,* supra, 152 Conn. App. 847. We therefore disagree with Brody's proposition that the strictures of *Oneglia* should be extended to postjudgment motions for contempt alleging fraudulent conduct.[9] As this court has noted, "even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." *Nelson* v. *Nelson,* 13 Conn. App. 355, 367, 536 A.2d 985 (1988); see also *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission,* supra, 260 Conn. 243 (citing *Nelson* with approval). In the present case, discovery was sought by the plaintiff not to make her whole, but simply to ascertain whether relief was necessary.

Absent an avenue of discovery, parties such as the plaintiff might effectively be precluded from meeting their burden of establishing contemptuous conduct. See *Marshall* v. *Marshall,* 151 Conn. App. 638, 651, 91 A.3d 1 (2014). "[C]ivil contempt is conduct directed against the rights of the opposing party. . . . Contempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . Failure to comply with a dissolution judgment is an indirect contempt because it occurred outside the presence of the court. . . . [A] finding of indirect civil contempt *must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Lynn* v. *Lynn,* 130 Conn. App. 319, 327, 23 A.3d 771 (2011). Permitting discovery as part of a postjudgment motion for contempt vindicates a party's interest in obtaining competent evidence of contempt, including contempt accomplished through fraudulent conduct. In so doing, it secures the court's fundamental interest in effectuating its outstanding orders.

As our Supreme Court has stated, "We have long

recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed." (Internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 771, 835 A.2d 953 (2003); see also *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 176–77, 757 A.2d 14 (2000) ("[d]ecisions regarding discovery are best left to the trial court in its reasoned discretion"); *Cersosimo* v. *Cersosimo*, 188 Conn. 385, 394, 449 A.2d 1026 (1982) (noting bedrock "principle that all rulings for discovery are subject to the discretion of the trial court"). That ample discretion "is limited, however, by the provisions of the rules [of practice] pertaining to discovery; Practice Book §§ 217–221 [now §§ 13-2 through 13-5]; especially the mandatory provision that discovery *shall* be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 58–59, 459 A.2d 503 (1983).

Accordingly, we perceive no reason why a party confronted with allegedly wilful noncompliance with an outstanding order of the court in a civil action should be precluded from obtaining discovery, consistent with the dictates of our rules of practice. The opposing party, or nonparty as the case may be, likewise retains the ability to object to such requests by any number of procedural vehicles, including written objection, motion to quash, motion to limit, or motion for a protective order. See Practice Book § 13-5; see also *Jewett* v. *Jewett*, 265 Conn. 669, 695, 830 A.2d 193 (2003) ("the defendant filed a motion to quash the subpoena because he claimed that the subpoena was overly broad and burdensome"). The court, in its discretion, may grant or deny such objections as it deems appropriate.

In sum, we conclude that the continuing jurisdiction of a trial court to effectuate and vindicate outstanding orders confers on it the authority to allow discovery in connection with postjudgment motions for contempt. The decision of when to exercise that authority is left to the sound discretion of the court.

### III

We now apply the foregoing to the facts of this case. The gist of the plaintiff's pending motion for contempt was that the defendant engaged in fraudulent conduct by disguising earnings obtained while employed at his sister's hedge fund firm in violation of the court's orders requiring payment of certain earnings and distributions to her. The motion for contempt thus implicates the court's continuing jurisdiction to effectuate and vindicate outstanding orders.

When Brody promptly filed motions challenging the propriety and permissibility of that discovery request, the court held a hearing thereon, at which the substance of that request was discussed in detail. At that time, counsel for the plaintiff articulated the basis of the discovery request and Brody's counsel articulated her objections thereto. Following argument, the court ruled in favor of the plaintiff, stating simply that it was denying Brody's motion to quash and that it was granting the plaintiff's discovery request. On our review of the record, we cannot say that the court, as an exercise of its continuing jurisdiction, abused its discretion in permitting such discovery.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] Though they both were served with a true and attested copy of the writ of error, neither the plaintiff nor the defendant is a party to the writ of error. The writ of error names "the Honorable Jane B. Emons, Judge of the Superior Court," as the defendant in error. No appearance was filed on her behalf.

In addition, we note that Brody's counsel subsequently requested "that this matter be submitted for a decision on the record and brief only, without oral argument" pursuant to Practice Book § 70-2. This court granted that motion.

[2] Appended to the subpoena was a "Schedule A," which provided as follows:

"1. Produce all records of all monies paid to [the defendant] by you or by any third party or entity in which you have an interest, for any reason, including, but not limited to, wages, trading profits, commissions, bonuses, expenses or any other payment of money whatsoever for the period July 1, 2010, to the date of your deposition.

"2. Produce all records, including cancelled checks, wire transfers or other documentation showing loans, gifts or payments made to third parties for the benefit of [the defendant] by you or by any entity in which you have an interest for the period July 1, 2010, to the date of your deposition.

"3. Produce all records regarding the formation and/or operation of Patriot Strategy Partners LLC and Mayflower Advisors, LLC or any other entity for which [the defendant] has performed any services during the period July 1, 2010, to the date of your deposition.

"4. Produce records of all payments made to [the defendant], Colonial Fund or Colonial Investment Management, LLC or any related entity by you or by any third party and/or entity on your behalf for consulting fees, purchase of assets or for any other purpose for the period July 1, 2010, to the date of your deposition.

"5. Produce records of monthly statements for each and every credit card for which you or any entity in which you own a greater than 10% interest have paid for goods or services charged by [the defendant] for the period July 1, 2010, to the date of your deposition."

[3] Brody also claimed in her writ of error that the court improperly overruled her objection to the plaintiff's demand for production of documents, but she has failed to brief that issue and, therefore, has abandoned the claim. See *State* v. *Peay*, 111 Conn. App. 427, 429, 959 A.2d 655 (2008), cert. denied, 291 Conn. 915, 970 A.2d 729 (2009).

[4] Brody submits, and we agree, that the writ of error is the proper vehicle for her to secure appellate review, as she is not a party to the underlying case. See *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 522 n.1, 803 A.2d 311 (2002). We further conclude that Brody's claim raises a colorable challenge to the trial court's authority to act, and thus is properly before us. See *Solomon* v. *Keiser*, 212 Conn. 741, 747–48, 562 A.2d 524 (1989) (recognizing exception to final judgment rule where appeal challenges authority of trial court to open judgment); *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 418–19, 426 A.2d 1324 (1980) (recognizing exception to final judgment rule where appeal challenges authority of trial court "to act to set aside the judgment"); accord *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 161, 740 A.2d 796 (1999) (applying *Solomon-Costle* exception to claim that

Workers' Compensation Review Board lacked authority to remand case to new trial commissioner); *Bruno* v. *Bruno*, 146 Conn. App. 214, 230 n.14, 76 A.3d 725 (2013) (claim that trial court improperly ordered discovery based on mere filing of motion to open immediately reviewable because raises colorable challenge to authority of court to act); cf. *Rocque* v. *Sound Mfg., Inc.*, 76 Conn. App. 130, 135–36, 818 A.2d 884 (noting that *Solomon* and *Costle* "concern the authority of a trial court to act" and failing to apply exception contained therein to claim that trial court improperly exercised its authority to grant motion to intervene), cert. denied, 263 Conn. 927, 823 A.2d 1217 (2003).

[5] During argument before the trial court on September 23, 2013, Brody's counsel candidly acknowledged that although *Oneglia* stated "in dicta" that "there is no generalized right to postjudgment discovery. . . . I do think that the court could give permission for it."

[6] That precedent is binding in this appeal, as it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding. See, e.g., *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 759, 966 A.2d 239 (2009) ("this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel" [internal quotation marks omitted]).

[7] *Bruno* likewise involved an allegation that an underlying judgment had been "obtained through . . . fraudulent conduct." *Bruno* v. *Bruno*, supra, 146 Conn. App. 220. That is, the fraud allegedly transpired prior to the entry of judgment.

[8] All parties—including Brody's counsel—acknowledged at the September 23, 2013 hearing on her motions to quash and for a protective order that the subpoena pertained to a pending motion for contempt.

[9] In her brief in support of the writ of error, Brody argues that Connecticut's appellate courts have "not addressed whether the *Oneglia* rule applies where a party seeks discovery in connection with a postjudgment motion for contempt as opposed to a motion to open the judgment. However, the logic of *Oneglia* applies fully where discovery is sought in connection with a postjudgment motion for contempt."

———————————————