# GLADYS KRONOVITTER ET AL. *v.* RICHARD DOYLE ET AL.
## (AC 31799)

Robinson, Bishop and Schaller, Js.

Argued November 17, 2011—officially released May 1, 2012

*William S. Palmieri*, for the appellant (named plaintiff).

*Catherine S. Nietzel*, with whom was *Peter E. DeMartini*, for the appellees (defendants).

*Opinion*

SCHALLER, J. In this action for malicious prosecution, the plaintiff Gladys Kronovitter[1] appeals from the judgment of the trial court, rendered after a trial by jury, in favor of the defendants, Richard Doyle and Kelly Fitch. On appeal, the plaintiff claims that the court improperly (1) instructed the jury to consider the elements of certain statutory infractions in relation to the element of probable cause, (2) admitted testimony from an expert witness without prior disclosure or a proper foundation and (3) admitted evidence pertaining to an in rem proceeding. We affirm the judgment of the trial court.

The jury found,[2] or reasonably could have found, the following facts. At all times relevant to the present

---

[1] Although Edward Kronovitter was originally a plaintiff in the underlying action, he died before this case was brought to trial. The various causes of action asserted on his behalf were dismissed and are not relevant to this appeal. We therefore refer in this opinion to Gladys Kronovitter as the plaintiff.

[2] We note that the jury in the present case made several explicit findings of fact through the use of interrogatories. To the extent that those findings are relevant to the present appeal, they are set forth in footnote 6 of this opinion.

action, the plaintiff resided at 52 Flat Rock Road in the town of Easton with her brother, Edward Kronovitter. On June 26, 2000, Doyle, a municipal police officer, and Fitch, the town's animal control officer, went to the plaintiff's home to check on her health and well-being. The condition of the plaintiff's property was poor. The vegetation was overgrown and the yard was covered with debris.[3] The residential structure was in a state of disrepair.[4] When the defendants located the plaintiff, she immediately requested that they leave the property. The defendants complied with this request.

On February 25, 2002, the defendants returned to the plaintiff's property to investigate complaints of dogs barking excessively during the night. On this date, the defendants observed two " 'makeshift pens' " constructed out of wooden pallets. These enclosures contained a total of approximately ten dogs and were "littered with dog feces." The defendants also observed another five dogs through a window in the plaintiff's home. Edward Kronovitter informed the defendants that he had approximately eighteen dogs on his property at that time. None of these dogs were licensed with the town or vaccinated against rabies.

---

[3] Specifically, the yard contained "old wood stoves, approximately one hundred plastic gallon milk containers filled with a rusty colored liquid, thousands of newspapers piled on top of each other at various locations in the yard, several large plastic tubs filled with stagnant water . . . [h]undreds of plastic bags containing household garbage, wood pallets, [and] hundreds of cat and dog food cans . . . ."

[4] Doyle described the plaintiff's residence as follows: "I could not get on the porch due to piles of newspapers, boxes and household garbage. . . . I then went to the back of the house and observed a porch which was falling down and had [three foot to four foot high] piles of newspapers, boxes and household garbage on it. . . . I could not see in the window due to dirt, mold and mildew on the inside of the glass. . . . On the floor was a path on top of household garbage approximately [one and a half feet to two feet high]. This path led to an adjoining room. The rest of [the kitchen] was covered with approximately [three feet to five feet] of household garbage and newspapers. Several boards from the ceiling [were] broken and hanging down."

Based on this information, the defendants applied for a warrant authorizing the seizure of the plaintiff's animals. The warrant was issued by the court, *Upson, J.*, on March 1, 2002, and executed by the defendants on March 4, 2002. On that date, the following facts were observed regarding the health of the animals. The dogs had overgrown nails and were covered in feces and urine. Their coats were dull and lacked grooming. Some of the dogs were thin, while others were obese. Two of the dogs had bloody stools. One dog had a sore on its hind leg, and another was missing an eye.

On April 4, 2002, Doyle applied for a warrant authorizing the arrest of the plaintiff for animal cruelty. In support of this application, Doyle made a sworn statement detailing both the condition of the plaintiff's property and the health of the animals seized on March 4, 2002. A warrant was issued by the court, *D. Brennan, J.*, on April 5, 2002. The plaintiff was arrested on April 12, 2002. The charges against the plaintiff were subsequently nolled on December 3, 2002.

The plaintiff commenced the present action against the defendants on December 1, 2005. The plaintiff filed a second revised complaint on October 3, 2007, alleging, inter alia, malicious prosecution.[5] On December 8, 2009, the jury returned a verdict in favor of the defendants.[6] This appeal followed. Additional facts will be set forth below as necessary.

---

[5] The plaintiff also alleged false arrest, intentional infliction of emotional distress, breach of contract and various constitutional violations. Those counts were not presented to the jury and are not at issue in the present appeal.

[6] The jury returned interrogatories finding that the plaintiff had failed to prove that either defendant had "submitted an affidavit for an arrest warrant that contained misstatements of facts or omissions of fact that were material" or "acted without probable cause in initiating criminal proceedings against the plaintiff."

I

The plaintiff's first claim is that the court improperly instructed the jury to consider the elements of certain statutory infractions when determining whether the defendants possessed probable cause. We are not persuaded.

The following additional facts are relevant to our resolution of this claim. The court issued the following instructions to the jury regarding the issue of probable cause. "The plaintiff was arrested for violating General Statutes §§ 53-247,[7] 22-349,[8] 22-338[9] and 22-363.[10] However, your determination as to whether there was probable cause to arrest the plaintiff is limited to whether there was probable cause for the charge of violating § 53-247 . . . ." The court continued: "You may, however, consider the circumstances giving rise to the other charges . . . such as whether the dogs had been vaccinated against rabies, and whether they were barking

---

[7] General Statutes § 53-247 (a) provides in relevant part: "Any person who . . . deprives of necessary sustenance . . . any animal, or who, having impounded or confined any animal, fails to give such animal proper care . . . or fails to supply any such animal with wholesome air, food and water . . . or, having charge or custody of any animal . . . fails to provide it with proper food, drink or protection from the weather . . . shall be fined not more than one thousand dollars or imprisoned not more than one year or both."

[8] General Statutes § 22-349 provides in relevant part: "The owning or keeping of an unlicensed . . . dog and the failure to purchase a license and pay the advertising and redemption fee within one hundred and twenty hours from the time the dog was impounded shall be an infraction."

[9] General Statutes § 22-338 provides in relevant part: "(a) Each owner or keeper of a dog of the age of six months or older . . . shall cause such dog to be licensed in the town clerk's office in the town where such dog is kept . . . (b) Any owner or keeper applying for a license for a dog under subsection (a) of this section . . . shall submit to the town clerk a rabies certificate signed by a licensed veterinarian, or a copy thereof, stating that such dog has been vaccinated against rabies . . . ."

[10] General Statutes § 22-363 provides in relevant part: "No person shall own or harbor a dog or dogs which is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance . . . ."

during . . . the night, in determining whether or not there was probable cause that the plaintiff violated General Statutes [§] 53-247." The court then proceeded to read the text of §§ 53-247, 22-349, 22-338 and 22-363. Despite explicitly restricting the question of probable cause to § 53-247, the court subsequently gave the following instruction: "the question before you was not whether the plaintiff was guilty or not guilty of *the charges*, but whether the defendants had probable cause to initiate *criminal proceedings* against her." (Emphasis added.)

We begin our analysis by setting forth the well established standard of review. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 142–43, 757 A.2d 516 (2000).

In order to establish a cause of action for malicious prosecution, one must "prove want of probable cause, malice and a termination of suit in the plaintiff's favor." (Internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 330, 994 A.2d 153 (2010). In the present case, the plaintiff seeks to recover for the defendants' pursuit of the animal cruelty charge against her. Consequently, the element of probable cause for the plaintiff's claim

of malicious prosecution must be evaluated in relation to the elements of § 53-247.

The plaintiff argues that the court's various references to §§ 22-349, 22-338 and 22-363 in its instruction caused the jury to believe that a violation of those statutes would require a verdict in favor of the defendants. Although the court's reading of §§ 22-349, 22-338 and 22-363 and its use of the plural nouns "charges" and "proceedings" could be confusing if read in isolation, when read as a whole, the court's instructions clearly informed the jury that the elements of these infractions were not relevant to the question of probable cause. Indeed, the court explicitly stated in its instruction that "determination as to whether there was probable cause to arrest the plaintiff is limited to whether there was probable cause for the charge of violating [§] 53-247 . . . ." Given the presence of this specific charge, we conclude that the instructions given by the court were not improper.

II

The plaintiff's second claim is that the court improperly allowed Fitch to offer expert testimony without complying with the disclosure requirements of Practice Book § 13-4 or laying a proper foundation.[11] We are not persuaded.

The following additional facts are relevant to our resolution of this claim. After the seizure of the plaintiff's dogs, Fitch fed and cleaned the animals on multiple occasions. Fitch testified that the dogs "all had feces on their feet [and] bellies" and often lost control of their bladder and bowels when approached by people.

---

[11] Practice Book § 13-4 (a) provides in relevant part: "A party shall disclose each person who may be called by that party to testify as an expert witness at trial, and all documents that may be offered in evidence in lieu of such expert testimony, in accordance with this section. . . ."

Fitch also testified that some of the dogs had an aggressive nature. Fitch also stated that some of the dogs were overweight, while others were thin. Finally, Fitch testified that two of the dogs had bloody stools.[12]

We begin by setting forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 489, 958 A.2d 1195 (2008).

The principal distinction between lay and expert witnesses is that the former is restricted, with limited exceptions, to providing factual testimony, while the latter is permitted to testify as to his or her opinion. See *Arnone* v. *Enfield*, 79 Conn. App. 501, 527, 831 A.2d 260 ("A lay witness provides facts that are within his personal knowledge without providing his opinion concerning such facts. The test for determining whether a witness is an expert is whether the witness has any peculiar knowledge or experience, not common to the

___

[12] Fitch also testified at trial that a veterinary doctor had performed tests on various samples of fecal matter and informed her that the cause of these bloody stools was parasites. This testimony was permitted by the court, over a hearsay objection by the plaintiff, for the limited purpose of demonstrating its effect on Fitch. See *Dinan* v. *Marchand*, 279 Conn. 558, 572, 903 A.2d 201 (2006) ("[s]tatements of declarants offered to show their effect on the listener, not for the truth of the contents of the statements, are not hearsay and are admissible"). Because this testimony was not admitted to establish the presence of parasites, we need not consider it for the purpose of the present claim.

world, that renders his *opinion* of assistance to the trier of fact." [Emphasis in original.]), cert. denied, 266 Conn. 932, 837 A.2d 804 (2003); Conn. Code Evid. § 7-1 ("[i]f a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue"); Conn. Code Evid. § 7-2 ("[a] witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue").

The plaintiff's claims are predicated on the assumption that Fitch was testifying as an expert witness. In the present case, Fitch offered testimony regarding the presence of bloody stools, the absence of basic grooming or hygiene, variations in weight and the general appearance of the animals owned by the plaintiff. While Fitch undoubtedly has special knowledge of and experience with animals, such knowledge and experience was not required for the factual statements contained in her testimony. Consequently, we conclude that Fitch was not testifying as an expert and that the trial court did not abuse its discretion by permitting her to testify.[13]

### III

The plaintiff's third claim is that the court abused its discretion by admitting evidence of an in rem proceed-

---

[13] In her brief, the plaintiff has also suggested that we disregard Fitch's testimony because she, in fact, had not cared for the animals. In support of this request, the plaintiff notes that Fitch's testimony as to the dates and frequency of this care "expanded and contracted wildly." Such testimonial inconsistencies, however, go to the weight rather than the admissibility of evidence. See *Gil* v. *Gil*, 94 Conn. App. 306, 318, 892 A.2d 318 (2006) ("[t]he fact that evidence may be subject to several interpretations does not affect its admissibility as long as it can be construed as relevant").

ing that resulted in an order transferring ownership of the dogs to the town of Easton. We are not persuaded.[14]

The following additional facts are relevant to our resolution of this claim. The plaintiff's second revised complaint asserted a cause of action against the defendants for breach of contract. Specifically, the plaintiff alleged that the defendants "[led her] to believe that [the] pets were being temporarily taken for vaccination, spaying or neutering, and subsequently would be returned," that "[t]he defendants created a document stating this, signed it, caused [Edward Kronovitter] to sign it" and also that the "defendants refused to return, and continue to refuse to return the seized pets to [the plaintiff]."[15] On December 2, 2009, the plaintiff offered testimony supporting these allegations. In response, Doyle testified the following day that the dogs were not returned to the plaintiff because of an in rem proceeding that transferred ownership of the dogs to the town of Easton. The plaintiff subsequently abandoned her breach of contract claim against the defendants.[16]

"[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. . . . The purpose of allowing the introduction of such evidence is not to give the opposing

---

[14] We again apply the standard of review governing claims of evidentiary error set forth by our Supreme Court in *Stokes* v. *Norwich Taxi, LLC*, supra, 289 Conn. 489.

[15] The written agreement, which was admitted by the plaintiff as a full exhibit at trial, reads in relevant part: "I Edward Kronovitter . . . consent and authorize Easton animal control officer Kelly Fitch to have all my dogs vaccinated for rabies and spayed. . . ." This agreement is signed by Kelly Fitch and Edward Kronovitter and is dated March 1, 2002.

[16] Although the plaintiff did not file a formal withdrawal of the breach of contract claim, her attorney represented to the court on at least two occasions that the claim would not be pursued.

party a license to introduce unreliable or irrelevant evidence but to allow the opposing party to put the initial offer of evidence into its proper context. . . . Thus, the trial court must consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit [the evidence] . . . to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . Such a decision, of course, rests within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Somers* v. *LeVasseur*, 230 Conn. 560, 565–66, 645 A.2d 993 (1994).

The plaintiff offered testimony tending to show that the defendants had wrongfully refused to return the animals to her possession. Evidence regarding the in rem proceeding, and the order which issued as a result, was necessary to place this testimony into its proper context. Consequently, we conclude that the admission of this evidence did not constitute an abuse of the trial court's discretion.[17]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] Moreover, we note that, at the conclusion of trial, the court issued the following instruction to the jury: "[T]he fact that the dogs were ordered taken by a court in the . . . in rem proceeding is not to be taken by you as evidence that the defendants had probable cause to arrest the plaintiff. That evidence was admitted solely for the purpose of establishing that the . . . dogs were ordered held by a court and not by the defendants." Absent evidence to the contrary, this court assumes that this instruction was fol-

lowed by the jury. See *Mulligan* v. *Rioux*, 229 Conn. 716, 732, 643 A.2d 1226 (1994).