******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAREN ZILKHA *v.* DAVID ZILKHA
(AC 36499)

Lavine, Prescott and Pellegrino, Js.

*Argued March 9—officially released August 11, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Shay, J.)

*Edward N. Lerner*, for the appellant (defendant).

*Norman A. Roberts II*, with whom, on the brief, was
*Antony L. Cenatiempo*, for the appellee (guardian ad
litem).

*Opinion*

PELLEGRINO, J. The defendant, David Zilkha, appeals from the judgment of the trial court, dispersing escrow money held from settlement funds received from his former employer to pay postjudgment fees to the guardian ad litem, the attorney for the minor children, and a custody evaluator.[1] On appeal, the defendant claims that the court (1) lacked authority to distribute the funds because the judgment of dissolution was never opened, and (2) improperly prohibited the defendant from testifying about his observations of the guardian ad litem's alleged improper conduct. We reverse the judgment in part with regard to the portion of the order requiring the distribution of the escrow money, and affirm it in all other respects.

The following facts and procedural history are relevant to our resolution of the defendant's claims. The plaintiff, Karen Zilkha, and the defendant were married on June 7, 1998. The plaintiff brought an action for dissolution of the parties' marriage, and a judgment of dissolution was rendered on May 31, 2005, incorporating by reference a separation agreement and a stipulation of the parties.

On November 14, 2008, the plaintiff filed a motion to open and set aside the dissolution judgment. The plaintiff's motion alleged that, during the pendency of the dissolution action, the defendant fraudulently failed to disclose a claim that he had against his former employer.[2] At the time the motion was filed, the defendant had already received $1,400,000 as a part of a settlement with his former employer regarding this claim, and a final payment of $700,000 was due to be paid to him in April, 2009. On April 9, 2009, the plaintiff filed an amended motion, requesting that the court order the defendant to escrow the $700,000 final payment.

On April 24, 2009, the plaintiff filed an ex parte motion for a temporary injunction to "[restrain] [the defendant] from moving, or in any way transferring the money set to be transferred to him on April 30, 2009 . . . ." The court denied the ex parte motion, but held a hearing on April 28, 2009, to permit all parties to be heard. At this hearing, the court granted the plaintiff's motion, ordering that $250,000[3] of the April 30, 2009 payment be held in escrow pending the outcome of the plaintiff's postjudgment motion to open. As of the April, 2009 hearing, the court had not held an *Oneglia* hearing[4] on the plaintiff's motion to open.[5] The court explained the purpose of putting the funds in escrow, and the amount of the funds, by stating that it "wanted to at least preserve what [it] think[s] would be a sufficient portion, *so that if* [*the plaintiff*] *prevails, ultimately, then there's something at the end of that particular process.*" (Emphasis added.)

On February 3, 2010, and February 4, 2010, the court held an *Oneglia* hearing in connection with the plaintiff's 2008 motion to open. At the hearing, each side presented evidence as to whether the defendant had committed fraud. Following the hearing, the court concluded that there was more than a mere suspicion that the defendant committed fraud on the basis of the testimony and evidence presented. Accordingly, the court granted the plaintiff permission to conduct discovery to gather more information on the defendant's alleged fraud before a decision would be made on the postjudgment motion to open. The plaintiff does not challenge the defendant's representation that, despite the court's order, she took no further action in regard to discovery. On the basis of our review of the record, the 2008 motion to open remains pending, and no decision has been made as to whether the defendant committed fraud, which would warrant opening the judgment.

On September 10, 2012, the attorney for the minor children filed a postjudgment motion for fees and retainers in order to compel the payment of present and future fees for himself, as well as for the guardian ad litem and the custody evaluator.[6] The court held a hearing on the motion over the course of six days, concluding on September 25, 2013. The court issued its memorandum of decision on November 19, 2013. In it, the court stated: "In general, in a family matter, an award of attorney's fees is within the discretion of the court, and in making a determination as to whether or not to grant such a request, the court must look at the financial abilities of the parties and apply the criteria set forth in General Statutes §§ 46b-62 and 46b-82."[7] The court ordered that both the defendant and the plaintiff each pay the following fees: $500 for the attorney for the minor children, $1500 for the guardian ad litem, and $500 for the custody evaluator. It further ordered the following disbursements from the court-ordered escrow: $40,000 to the attorney for the minor children, $62,577.95 to the guardian ad litem, and $9000 to the custody evaluator, as well as an additional $15,000 each for the attorney for the minor children and the guardian ad litem as retainers for upcoming litigation.[8] The defendant appeals from the court's order that disbursed from the escrow funds the fees of the guardian ad litem, attorney for the minor children, and the custody evaluator, and he appeals the court's ruling on his right to testify concerning his observations of the guardian ad litem's conduct. Additional facts will be set forth as necessary.

I

The defendant first claims that the court lacked authority to distribute the escrow funds because the judgment of dissolution had not been opened. The defendant argues that the court's ruling at the conclusion of the *Oneglia* hearing only permitted the plaintiff

to conduct limited discovery, following which, the court would consider the plaintiff's motion to open. The guardian ad litem argues in response that the record is insufficient for this court to review the defendant's claim. Additionally, she contends that, because the defendant did not appeal or file an amended appeal from the court's subsequent order on December 4, 2013, which awarded attorney's fees from the escrow account to two other individuals, he waived this claim and rendered his appeal moot on this issue.[9] We agree with the defendant.

We begin by setting forth the applicable standard of review. The defendant in this case presents a situation in which he claims the court acted without authority. "[O]ur review of challenges to the authority of the court to act is plenary." *Hogan* v. *Lagosz*, 147 Conn. App. 418, 433, 84 A.3d 434 (2013); see also *Brody* v. *Brody*, 153 Conn. App. 625, 630, 103 A.3d 981, cert. denied, 315 Conn. 910 (2014).

"Pursuant to General Statutes § 52-212a, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . An exception to the four month limitation applies, however, if a party can show, inter alia, that the judgment was obtained by fraud. . . .

"A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud." (Citation omitted; internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 441, 93 A.3d 1076 (2014); see also *Billington* v. *Billington*, 220 Conn. 212, 217–18, 595 A.2d 1377 (1991); *Spilke* v. *Spilke*, 116 Conn. App. 590, 595, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009); *Mattson* v. *Mattson*, 74 Conn. App. 242, 245, 811 A.2d 256 (2002).

We conclude that the court lacked authority to order distributions from the escrow account to pay the attorney for the minor children, the guardian ad litem, and the custody evaluator. General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse." The court can redistribute assets pursuant to a motion to open. See General Statutes § 52-212a; see also *Dougherty* v. *Dougherty*, 109 Conn. App. 33, 38–39, 950 A.2d 592 (2008). Nevertheless, "[u]ntil a motion to open has been granted, the earlier judgment is unaffected . . . ." *Bruno* v. *Bruno*, 146 Conn. App. 214, 230, 76 A.3d 725 (2013). In this case, although the court was free to order that the defendant pay some or all of the fees to the attorney for the minor children, guardian ad litem and custody evaluator, it lacked the authority to direct that these payments be

made from the escrowed funds. We are aware of no authority, and the guardian ad litem has cited none, that a court is authorized to choose which of a party's assets must be used to pay that party's share of fees for service rendered by a guardian ad litem, attorney for the minor children, or other individuals.[10] Consequently, the court could not make orders for funds to be disbursed from the escrow account because those funds belonged solely to the defendant, until and unless, the court opened the judgment and distributed the escrowed funds, if at all.[11] Accordingly, the court was without authority to disburse funds from the escrow account. The judgment is reversed as to the order to disburse the escrow funds to the guardian ad litem, attorney for the minor children, and the custody evaluator, and that portion of the order is vacated.

## II

The defendant next claims that the court improperly prohibited him from testifying as to his observations regarding the guardian ad litem's alleged improper conduct.[12] The defendant argues that the court improperly denied him an opportunity to testify about relevant and material conduct on the part of the guardian ad litem as part of his effort to reduce the amount of fees she was to receive. The guardian ad litem contends that the defendant did not adequately preserve or brief this claim. Alternatively, the guardian ad litem argues that, if the merits of the claim are reached by this court, the testimony was restricted properly and the court therefore did not abuse its discretion. Reaching the merits of the claim, we agree with the guardian ad litem.[13]

The following additional facts are relevant to our resolution of this claim. In the defendant's direct examination during the hearing on the attorney for the minor children's motion, on July 17, 2013, the defendant's counsel asked the defendant for his opinion on what the guardian ad litem had done that he thought was improper since January, 2012. The defendant responded that "[the guardian ad litem] could have done more . . . ." The court then interjected and stated: "No, no. Not could have. [The question] is what did she do that was improper." The defendant responded: "I believe, it's been improper not to do more to get me back with my children. I mean, essentially, she's done nothing to get me back with my children." After this statement by the defendant, the court explained at length the roles of the guardian ad litem and the attorney for the minor children, specifically articulating that they do not work for the parties, they work for the court and the children, respectively. The court further explained that "just because you believe [that] they are not advocating for you to exercise your visitation rights with your children, that's not improper conduct. And I just want that on the record. And it's important that litigants understand

that. . . . [I]f it bears repeating, then I will repeat it. They are not advocates for you and your position. I know how heartfelt your position is. I know you want to have a relationship with your children. I understand that. I get it. But they're here to assist your children, and they make the call that they think is in the children's best interest, and if they do anything other than that, and if they trample on your toes, too bad."

The court then stated that the original question by the defendant's counsel asking for the defendant's opinion on the guardian ad litem's alleged improper conduct was "out of line" and "ludicrous." On the record, the court explained the proper way in which to produce such evidence: "[T]o ask a witness who, obviously, has a bias toward his position—and who is very frustrated with a ten year old case, as I would be too—to ask him to opine and to say that this attorney did something improper I think that that is really pushing the boundaries. . . . [W]e all should know better than that and that's improper. But there's a proper way to get that. So if your client feels that for some reason that [the guardian ad litem] or [the attorney for the minor children] for whatever reason did not . . . comply with the terms or if they were part and parcel of that agreement, then you know the proper way to do it. But this [is] totally improper and it's unacceptable and it's not right. I will not tolerate it."

On September 23, 2013, the defendant filed a corrected motion for an articulation regarding the court's conclusions at the July 17, 2013 hearing concerning the alleged improper conduct of the guardian ad litem and the court's reference to the guardian ad litem as a "consummate professional."[14] In this motion, the defendant set forth seven acts of the guardian ad litem that he believed were improper and that fell below the standard necessary to qualify as sufficient performance.[15] The court heard argument on the motion on September 24, 2013, and denied the motion for articulation. The court then issued its memorandum of decision on November 19, 2013, finding that the fees of the guardian ad litem and the attorney for the minor children were reasonable.

We first set forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 567, 903 A.2d 201 (2006). "The principal distinction between lay and expert witnesses is that the former is restricted, with limited exceptions, to providing factual testimony, while the

latter is permitted to testify as to his or her opinion." *Kronovitter* v. *Doyle*, 135 Conn. App. 157, 164, 41 A.3d 1108 (2012). "Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error." (Internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 223, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 792 (2006).

Here, the trial court properly precluded the defendant's counsel from eliciting testimony regarding the defendant's opinion as to the propriety of the conduct carried out by the guardian ad litem. Section 7-1 of the Connecticut Code of Evidence provides: "If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." The defendant, as a lay witness, did not have any requisite level of special knowledge regarding the duties of a guardian ad litem. Moreover, his statement that the guardian ad litem "could have done more" because "she's done nothing to get me back with my children" is not helpful to garner a clear understanding of a determination of a fact in issue. The defendant's statements regarding the guardian ad litem's conduct were not factual in nature; they were his opinion that the guardian ad litem had not done enough to advocate his interest. Yet, the role for the guardian ad litem is to "be heard on all matters pertaining to the *interests of any child*, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child. . . ." (Emphasis added.) General Statutes § 46b-54 (e). The role of the guardian ad litem is not, as the court correctly pointed out, to be an advocate for the defendant. This is not to say that there could never be a proper challenge to the fees or performance of a guardian ad litem, but here, the defendant could not opine as to the propriety of the alleged improper conduct by the guardian ad litem by stating that he felt the guardian ad litem "could have done more." Therefore, the court did not abuse its discretion by restricting the defendant's testimony regarding the guardian ad litem's alleged improper conduct.

The judgment is reversed only as to the disbursement of funds from the escrow account and that portion of the order is vacated. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In this appeal, only the guardian ad litem and the defendant have filed briefs. The attorney for the minor children adopted the brief filed by the guardian ad litem pursuant to Practice Book § 67-13. This court notified the plaintiff, Karen Zilkha, that "[t]he appeal will be considered on the basis of

the defendant-appellant's brief and appendix and the brief of the guardian ad litem unless the plaintiff-appellee files her brief on or before November 3, 2014." Subsequent to this notification, the plaintiff failed to file a brief.

[2] The trial court found that, during the pendency of the dissolution action, the defendant had retained an attorney to pursue the claim against his former employer.

[3] Ultimately, $246,000 was placed into escrow.

[4] Under *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269, 540 A.2d 713 (1988), a party seeking to open a judgment of dissolution on the basis of allegations of fraud does not have a right to conduct discovery based only on its filing of a motion to open. Instead, a hearing is held to determine if the party can substantiate the allegations of fraud beyond a mere suspicion. See id., 276. If so, the court opens the judgment for the limited purpose of discovery, and later issues an ultimate decision on the postjudgment motion to open after discovery is completed and another hearing is held. See id., 270; see generally *Brody* v. *Brody*, 153 Conn. App. 625, 630–34, 103 A.3d 981 (discussing underlying principles and procedure followed in *Oneglia* hearing), cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

[5] The court stated at the April, 2009 hearing: "I think this is a fairly close call. . . . I guess what's bothering me is that I don't have enough of a factual basis to make a clear finding of fraud. And I had kind of hoped that the *Oneglia* hearing would at least be an orderly presentation of the evidence from both sides as to what happened and then the discovery would take its course."

[6] The custody evaluator was appointed by the court at the request of the parties to determine whether the minor children were ready for reunification with the defendant and to recommend steps to effectuate reunification.

[7] General Statutes § 46b-62 provides: "(a) In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213w, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints counsel or a guardian ad litem for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of such counsel or guardian ad litem or may order the payment of such counsel's or guardian ad litem's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the compensation of such counsel or guardian ad litem shall be established and paid by the Public Defender Services Commission." Section 46b-62 was amended by No. 14-3, § 5, of the 2014 Public Acts. Those changes to the statute are not relevant to this appeal, and for purposes of clarity we refer to the current revision of the statute.

[8] The attorney for the minor children moved for the retainers to be paid "for ongoing and future services to be rendered and costs to be incurred." Additionally, the court, in its memorandum of decision, stated that there was further litigation scheduled affecting the best interests of the minor children that required the continued services of the guardian ad litem and the attorney for the minor children.

[9] On December 4, 2013, during a status conference on the record, the court ordered, by agreement, that fees to doctors David Israel and Linda Smith were to be paid from the escrow account. Israel was paid his outstanding balance, and Smith was to be paid her retainer and past fees. The defendant's counsel stated at this conference: "That portion could be allocated to him but at least we have—I don't want to prejudice my legal position on the other money. So what I'm saying is you say it's coming from [the defendant], and it's paid out of that escrow, we don't object at all."

We disagree with the guardian ad litem that the defendant was obligated to appeal or file an amended appeal from other escrow distributions in order to withstand a mootness challenge to this appeal. "The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002). The defendant arguably, having not appealed the December 4, 2013 order, does not challenge the award of fees to Israel

and Smith to be paid from the escrow account. This does not affect whether the defendant can obtain practical relief in his appeal from the November 19, 2013 judgment of the court as discussed in this opinion.

[10] In other words, the court could not direct the defendant to sell his home so that he could pay the fees from the proceeds. It should be left to the defendant to decide how to order his financial affairs in light of his rightful obligation to pay these fees.

[11] On December 4, 2013, the court stated on the record that the funds in escrow were, as of December, 2013, the defendant's property.

[12] Although we reverse the trial court's judgment in part on the defendant's first claim, because this issue is likely to reoccur in the ongoing litigation of this case, we address his evidentiary claim. See *Fox* v. *Fox*, 152 Conn. App. 611, 614, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014).

[13] Although we agree with the guardian ad litem that the testimony was properly precluded and that the court did not abuse its discretion, we disagree that the defendant did not preserve this claim. This claim was preserved by the defendant through his testimony at the July 17, 2013 hearing and his filing of a motion to articulate following the hearing. The motion to articulate dealt directly with the testimony he was precluded from giving, namely, the ability to explain the certain acts by the guardian ad litem that he felt were improper.

[14] Due to a scrivener's error, the motion states that the hearing was on June 17, 2013.

[15] The seven acts are as follows: "(1) [c]ommitting fraud on [the defendant] by misleading him early on in the case that all young fathers have supervised visitation; (2) [t]ricking him into hiring Attorney Louise Truax without notifying him that she ran a supervision agency; (3) [t]hreatening [the defendant] that he would not see his child[ren] unless certain bills were paid; (4) [s]kipping court when a motion was on for the children to be able to go to [the defendant's] nephew's bar mitzvah; (5) [g]etting supervisors fired for pointing out that supervision with [the defendant] wasn't necessary during 2006 and 2007; (6) [t]rying to deplete [the defendant] of all of his financial resources by having a supervision structure that was absolutely expensive and in many cases unworkable; [and] (7) [n]ot properly or professionally dealing with issues of reunification."