******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELIZABETH A. GAARY *v.* PATRICK J. GILLIS
(AC 37170)

DiPentima, C. J., and Lavine and Alvord, Js.

*Argued October 26, 2015—officially released January 5, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Munro, J.)

*John R. Williams*, for the appellant (defendant).

*Thomas M. Cassone*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Patrick J. Gillis, appeals from the postjudgment ruling of the trial court denying his motion to open prior postdissolution modifications of alimony and child support obligations on the ground of fraud.[1] The defendant claims that the trial court abused its discretion in denying his motion to open because the plaintiff, Elizabeth A. Gaary, at the hearings on the prior postdissolution modification motions (1) "concealed . . . a lump sum payout of $700,000" in connection with the settlement of her pending litigation in Michigan and (2) "concealed . . . the fact that her relationship with her Michigan partners was severed because of her intentional wrongdoing." We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the defendant's claims. The court, *Munro, J.*, dissolved the parties' fourteen year marriage on June 17, 2010. Various orders were entered at that time, including, inter alia, orders relating to alimony and child support for their two minor children. Approximately one month after the dissolution judgment was rendered, the plaintiff, a radiologist, was terminated from her employment by Premier Medical Care, P.C. (Premier), a Michigan professional corporation.

On August 6, 2010, the plaintiff filed a motion for modification to decrease the amount of alimony she was obligated to pay the defendant for the stated reason that her "employment [had been] involuntarily terminated." On June 21, 2011, she filed a motion for modification to increase the defendant's child support obligation, claiming a decrease in her employment income. A hearing on the plaintiff's motion to modify her alimony obligation was held on June 7 and 8, 2011. At the conclusion of the hearing, the court ruled from the bench that alimony payments to the defendant were to be decreased from $1750 per week to $700 per week. As part of that ruling, the court stated: "I am going to provide for a second look after the litigation between the plaintiff and her former employer is concluded. . . . [T]he second look would have to occur after that trial is concluded, a result is obtained, and if no appeal is taken."

On August 3, 2011, the court held a hearing on the plaintiff's motion to increase the amount of child support to be paid by the defendant. At the conclusion of the hearing, the court allowed the parties to file posthearing briefs. The court issued its memorandum of decision on February 8, 2012, in which it increased the amount of the defendant's child support obligation for the minor children to $132 per week.

In early January, 2012, the plaintiff's attorneys in Michigan, who were representing her in the Michigan

employment litigation, received a check in the amount of $700,000, payable jointly to the law firm and the plaintiff as settlement proceeds. On February 27, 2012, the defendant filed a postjudgment motion to modify the support and alimony orders entered on June 8, 2011, and February 8, 2012, claiming a substantial change in circumstances occasioned by the plaintiff's receipt of $700,000 as "partial" settlement of the Michigan litigation. On the same day, the defendant filed a motion to open the financial orders in the June 17, 2010 judgment of dissolution because, inter alia, the plaintiff "realized a $700,000 financial gain" from her business interests in Michigan even though she had claimed in 2010 that those interests had zero value. Those two motions were never pursued by the defendant or adjudicated by the trial court.

On November 20, 2013, which was approximately twenty-two months after the defendant became aware of the receipt of the settlement proceeds, he filed his motion for an *Oneglia* hearing that is the subject of the present appeal. The defendant claimed that the June 8, 2011 and February 8, 2012 rulings should be opened on the basis of fraud. Following the June 26, 2014 hearing on that motion, and the submission of posthearing briefs by the parties, the court issued its memorandum of decision on August 26, 2014, denying the defendant's motion. The court found that "[t]he plaintiff had disclosed the litigation pending in Michigan at the modification hearing. Therefore, there was no fraudulent representation." This appeal followed.

The defendant subsequently filed a motion for articulation that requested the trial court to articulate its holding regarding the defendant's claim that the plaintiff had "fraudulently concealed the fact that the termination of her prior employment was caused by her own actions." In the court's responsive articulation filed May 26, 2015, it made the following factual findings: "The plaintiff had disclosed to the court and to the defendant that she had been terminated as an employee. . . . The plaintiff provided testimony about the termination on June 7, 2011. There was uncontroverted testimony that there was litigation pending between the plaintiff and [her former employer]. Testimony was elicited by the defendant's legal counsel from the plaintiff that her termination was a surprise and that she had been placed on employment probation due to her poor performance." For those reasons, the court concluded that there was no concealment as alleged by the defendant.

We first set forth the applicable standard of review and legal principles that govern our analysis of the defendant's claims. "Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court . . . to deny a motion to open a judgment. . . . In an appeal from a denial of a

motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . .

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.[2] . . . A court's determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous. . . . There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered;[3] (2) there must be clear proof of the fraud; and (3) there is a substantial likelihood that the result of the new trial will be different." (Citation omitted; footnotes added; internal quotation marks omitted.) *Spilke* v. *Spilke*, 116 Conn. App. 590, 594–95, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009).

"In considering a motion to open the judgment on the basis of fraud, then, the trial court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery. See *Oneglia* v. *Oneglia*, [14 Conn. App. 267, 269–70, 540 A.2d 713 (1988)] (approving trial court's position that [i]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held)." (Citations omitted; internal quotation marks omitted.) *Bruno* v. *Bruno*, 146 Conn. App. 214, 231–32, 76 A.3d 725 (2013).

In the present case, the defendant was required to demonstrate that there was probable cause to believe that the court's prior modifications of the parties' alimony and child support obligations were obtained by

fraud, i.e., that the plaintiff had concealed the receipt of settlement proceeds from her Michigan employment litigation and that she concealed that she was terminated from her previous employment "because of her intentional wrongdoing."

The trial court determined, after the requisite hearing; see *Bruno* v. *Bruno*, supra, 146 Conn. App. 232–33; that the defendant failed to demonstrate that the plaintiff had concealed these matters during the hearings on the prior modification hearings. The court's findings in this regard are not clearly erroneous and are fully supported by the record. With respect to the settlement proceeds, it is apparent that the defendant was aware of the pending Michigan litigation and the possibility that it would settle or proceed to trial at the time of those modification hearings. At the beginning of the June 7, 2011 hearing on the plaintiff's motion to decrease her alimony obligation to the defendant, the defendant's counsel requested a continuance because "there is litigation as [to] whether [the plaintiff] was wrongfully terminated" and it was not known at that point "whether she has certain rights as to reinstatement, as to damages, [or] as to back pay . . . ."[4] For that reason, the defendant "object[ed] to her proceeding on the motion to modify at [that] time and respectfully request[ed] that any prosecution of this motion be continued or adjourned until such time as there is a final decision in the matter of— in the matters pending in the state of Michigan."

After the court denied the motion for a continuance, the two day hearing proceeded with the plaintiff's testimony. On cross-examination, the defendant's counsel focused on the pending employment litigation. In responding to his questions, and the questions of her own counsel, the plaintiff testified that she was surprised by her termination from employment, that her employer had filed a lawsuit against her immediately after she had received the notice of termination, that she could not use her former employer as a reference for future employment because of the "contentious" nature of their relationship, and that her employer had contested her right to any unemployment compensation. The notice of termination, at the request of the defendant's counsel, was marked as a full exhibit. Referring to the exhibit, the defendant's counsel stated: "[T]he reason for your termination was for cause, correct?" The plaintiff responded: "That's what they allege, yes."

The hearing was continued to the next day, June 8, 2011. At that time, the plaintiff continued to respond to the defendant's questions regarding her termination of employment. The plaintiff testified: "[T]heir alleged cause for firing me was regarding outside activities as an assistant clinical professor at Columbia and teaching." She also acknowledged that her former employer was "asking me to resign or take some kind of admission

of fault." Additionally, when asked by the defendant's counsel, "what do you think your case is worth," the plaintiff stated that she did not know because the matter still was being litigated.[5]

After witness testimony had concluded, the parties' counsel made closing arguments to the court. The defendant's counsel stated: "[I]t appears from the pleadings and it appears from the exhibit, which is the administrative law judge's decision upholding [the plaintiff's] award of unemployment compensation . . . it appears that—which, according to [the plaintiff], was not appealed—it appears that she has a pretty good case, that she was wrongfully terminated in Michigan, and that—you, know, she is going to be entitled to some kind of an award or some kind of a settlement. We don't know what that is going to be."[6] For that reason, the defendant's counsel requested that the court include a provision in its ruling for a "second look" after the litigation concluded: "I would think, at the very least, that we would have a second look to any decision Your Honor might make after that decision comes down in Michigan to see how it would impact on [the plaintiff's] income since her termination . . . ." The court agreed with the request of the defendant's counsel and, in its ruling made at the end of the hearing, stated: "I am going to provide for a second look after the litigation between the plaintiff and her former employer is concluded."

At the August 3, 2011 hearing on the plaintiff's motion to increase the defendant's child support obligation, again there were questions addressed to the status of the ongoing Michigan employment litigation. The defendant's counsel asked the plaintiff whether she had retained an expert to value her interest in Premier. She responded in the affirmative, and counsel then asked: "Didn't your expert render an opinion that your interest in Premier had a fair value in excess of $1.6 million." She stated that her expert had reached that conclusion.

The defendant became aware of the settlement, or partial settlement, of the Michigan employment litigation and the amount of the settlement proceeds in January, 2012. On February 27, 2012, the defendant filed a postjudgment motion to modify the support and alimony orders entered on June 8, 2011, and February 8, 2012, that was based on the plaintiff's receipt of the settlement proceeds, and a motion to open the financial orders in the June 17, 2010 judgment of dissolution on the ground that the plaintiff had claimed in 2010 that her interest in Premier had zero value. The defendant, however, did not pursue those motions, and did not seek adjudication of these issues by the court. Instead, the defendant filed the present motion for an *Oneglia* hearing on November 20, 2013, claiming fraud through the plaintiff's alleged concealment of the amount of the settlement proceeds and the reason for her termination

from employment.

After the defendant's presentation of evidence at the June 26, 2014 hearing, the court concluded that "there was no fraudulent representation" because "[t]he plaintiff had disclosed the litigation pending in Michigan at the modification hearing," and "[t]he plaintiff provided testimony about the termination on June 7, 2011 [such that the court] does not find . . . a concealment as alleged by the defendant." The court's findings and conclusions are amply supported by the record, as evidenced by the quoted excerpts from the transcripts of the hearings on the prior motions for modification. We conclude that the court correctly determined that the defendant was unable to meet the minimal evidentiary threshold of establishing his allegations of fraud beyond a mere suspicion, and, therefore, that the court did not abuse its discretion in denying the defendant's motion to open the prior postdissolution modifications of alimony and child support.

The judgment is affirmed.

[1] The defendant's motion, dated November 20, 2013, was titled "Motion to Modify Judgment as Modified by Court Orders (*Malone*, *J*.) Entered June 8, 2011, and February 8, 2012." At the time of the June 26, 2014 hearing on the defendant's "Motion to Modify," the parties agreed that the motion was in essence a motion to open for fraud, which necessitated a hearing pursuant to *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988), as evidenced by the following colloquy:

"The Court: [A]s I read through the motion, while it is entitled motion to modify, looking at the body of the motion, I interpret this to be essentially a motion for an *Oneglia* hearing to determine whether there is a basis to go forward with a formal hearing to reopen decisions that were entered by me and found by me on June 8, 2011, and February 8, 2012. Is that correct?

"[The Defendant's Counsel]: Yes, Your Honor. I have no problem with proceeding on the basis of this being an *Oneglia* hearing. I think that we're prepared with the evidence that will meet that burden.

"The Court: All right. Is that your understanding, sir?

"[The Plaintiff's Counsel]: Yes, Your Honor. . . . [W]e are here and present for a preliminary *Oneglia* hearing . . . ."

[2] Under certain circumstances, fraud may consist of silence or concealment when a person is under a duty to disclose information. See *Reville* v. *Reville*, 312 Conn. 428, 441, 93 A.3d 1076 (2014).

[3] The plaintiff claims, as an alternative ground for affirmance of the judgment, that the defendant's motion "should have been denied as a result of laches and his inexcusable delay in its filing." In light of our resolution of the defendant's claims, we need not reach the plaintiff's alternative ground for affirmance.

[4] A copy of the complaint and counterclaim pertaining to the Michigan employment litigated already had been provided to the defendant.

[5] In the plaintiff's June 6, 2011 financial affidavit, she listed the Michigan litigation under "all other assets" with the following explanation: "Net value of Premier v. Affiant (Employment Litigation) not included. Outcome of litigation could result in some [additional] liability or asset . . . ."

[6] Despite having made the statement that it appeared that the plaintiff had been "wrongfully terminated," the defendant's counsel made a subsequent statement during closing arguments that "reading the complaint and the counterclaim [from the Michigan litigation], there may be some basis for suspecting that [the plaintiff] may have caused her own problems in this regard."